**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ADVANCED ACCELERATOR APPLICATIONS USA, INC., NOVARTIS PHARMACEUTICALS CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>CURIUM US LLC, CURIUM US HOLDINGS LLC,<br><br>Defendants. | Civil Action No. ______<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Advanced Accelerator Applications USA, Inc. ("ADACAP") and Novartis Pharmaceuticals Corporation ("Novartis" and, together with ADACAP, "Plaintiffs") bring this action against defendants Curium US LLC and Curium US Holdings LLC (together, "Curium" or "Defendants"), which, on information and belief, both have global headquarters located at 2 Seaport Ln., Boston, MA 02210, and conduct significant business within this District. In support of this action, Plaintiffs allege as follows:

## INTRODUCTION

1. This is a false advertising action seeking to stop Curium's false and misleading statements claiming, among other things, that its cancer treatment is "equivalent" to Novartis's competing treatment. Curium makes these false statements to gain an early foothold in the market for precision treatments for certain tumors in the digestive tract and pancreas, and court intervention is necessary to stop the harm to both cancer patients and Novartis alike.

2. More specifically, Curium's advertising (1) falsely conveys that the U.S. Food and Drug Administration ("FDA") has determined Curium's BEXLUTRY treatment is "equivalent"

to Plaintiffs' leading, first-in-class drug LUTATHERA®; and (2) falsely conveys that studies show that Curium's and Plaintiffs' drugs are clinically equivalent. Curium's advertising comprises a careful campaign to deceive healthcare providers ("HCPs")[1] and cancer patients into believing that BEXLUTRY is equivalent to and interchangeable with LUTATHERA®—***when the FDA has made no such determination***.

3. On January 26, 2018, the FDA approved ADACAP's New Drug Application ("NDA") for LUTATHERA® (Lutetium 177 dotatate), which launched shortly after that approval. LUTATHERA® is an intravenous infusion that treats somatostatin receptor-positive gastroenteropancreatic neuroendocrine tumors ("GEP-NETs").

4. GEP-NETs are potentially life-threatening tumors in the pancreas and digestive tract. They can be very difficult to treat because GEP-NETs are often diagnosed at advanced, metastatic stages.

5. LUTATHERA® was a novel treatment for GEP-NETs. It is a radioligand therapy—a precision cancer therapy that combines a radioactive isotope and a targeting molecule (called a ligand), to deliver radiation directly to cancer cells. Specifically, LUTATHERA® combines the radioactive isotope lutetium-177 ("Lu-177") with a ligand called dotatate. The dotatate component attaches to somatostatin receptors on the patient's tumors, and the Lu-177 component releases beta radiation that damages and kills the tumor cells, while limiting harm to nearby healthy tissue.

[1] HCPs in the context of this complaint encompass all licensed practitioners (and their staffs) involved in the supply of and/or treatment with radioligand NETs therapies, including but not limited to nuclear pharmacies, nuclear medicine physicians, medical oncologists, specialized treatment facilities, radiation safety officers, nuclear-medicine physicists, and hospitals.

6. Dosing of LUTATHERA® is particularly complex because Lu-177 begins decaying from the moment it is manufactured. To ensure a patient receives the correct prescribed dosage, an HCP must order a dose for a specific date and time of administration. Plaintiffs' manufacturing site then supplies the exact infusion volume needed to ensure that by the time the treatment reaches the HCP and patient for infusion, the treatment contains the correct amount of Lutetium 177 dotatate. Given the complexities of this drug, HCPs and patients must have confidence in both the quality of the drug and the manufacturer supplying it. Plaintiffs pioneered this form of ready-to-use radioligand therapy, and—based on their years of providing a high-quality treatment—HCPs and patients have confidence in both Plaintiffs and LUTATHERA®.

7. On September 14, 2026, the FDA approved Curium US LLC's NDA for BEXLUTRY, Curium's competing radioligand therapy for the treatment of GEP-NETs.

8. The FDA approved BEXLUTRY under Section 505(b)(2) of the Federal Food, Drug, and Cosmetic Act ("FD&C Act"), a pathway that allows applicants to rely in part on the FDA's prior findings of safety or effectiveness for an already approved drug.

9. Unlike the pathway for "generics" approved under Section 505(j) of the FD&C Act, the Section 505(b)(2) pathway does not automatically result in a determination of "therapeutic equivalence"—an FDA term of art defined by regulation that requires certain predicate findings by the FDA. As the FDA has explained, it "does not routinely conduct therapeutic equivalence evaluations for every product approved in a 505(b)(2) application. In reviewing and approving applications submitted pursuant to the 505(b)(2) pathway, [the] FDA makes a finding of safety and effectiveness. Although [a] 505(b)(2) application may rely, in part, on a finding of safety and/or effectiveness for another listed drug, the requirements for approval of these applications do

not necessarily encompass the considerations relevant to evaluating whether the products are therapeutically equivalent to the listed drug they rely upon."[2]

10. The FDA's approval of BEXLUTRY did not include a determination that BEXLUTRY and LUTATHERA® are therapeutically equivalent. Further—and relevant to BEXLUTRY's advertising—the FDA did not issue any findings of "clinical equivalence," which is neither an FDA term of art nor a finding the FDA makes in connection with drugs it approves pursuant to the 505(b)(2) pathway.

11. Immediately following the FDA's approval of BEXLUTRY, Curium began disseminating the marketing claims depicted below and on the following page, through its HCP-facing BEXLUTRY website. These claims unambiguously convey the literally false messages that (1) the FDA has determined BEXLUTRY is equivalent to LUTATHERA® and (2) that reliable studies show that the two drugs have "equivalent clinical benefits."







2 Food & Drug Admin., *Evaluation of Therapeutic Equivalence: Guidance for Industry* 5 (Aug. 2026), https://www.fda.gov/media/160054/download.

**The FDA-approved lutetium Lu 177 dotatate radioligand equivalent for adults with SSTR+ GEP-NETs,[1-3] backed by Curium's expertise and commitment to the NET community**

12. Curium made similar statements in a September 14, 2026, press release, an excerpt of which is shown below.

> *BEXLUTRY is the first radioligand equivalent for the treatment of GEP-NETs in adults and the first radioligand therapy from Curium™ approved by the FDA*
>
> **(Boston, MA – 14 September, 2026)** – Curium™ announced today that the U.S. Food and Drug Administration (FDA) has approved its New Drug Application (NDA) for BEXLUTRY™ lutetium Lu 177 dotatate injection for the treatment of somatostatin receptor-positive gastroenteropancreatic neuroendocrine tumors (GEP-NETs), including foregut, midgut, and hindgut neuroendocrine tumors in adults.

13. Curium's advertising repeatedly links statements of equivalence—including statements that BEXLUTRY has "equivalent clinical benefits," has "established clinical equivalence," and is a "radioligand equivalent"—with statements concerning the FDA's approval. For example, Curium's HCP-facing website states that "BEXLUTRY ***established clinical equivalence through the FDA's 505(b)(2) approval pathway***," and characterizes BEXLUTRY as "[t]he ***FDA-approved*** lutetium Lu 177 dotatate ***radioligand equivalent***," and "the ***FDA-approved*** Lutetium Lu 177 dotatate ***with equivalent clinical benefits***." Each of these statements falsely conveys that the FDA approved BEXLUTRY as "equivalent" to LUTATHERA® in some capacity. Further, the statement that "BEXLUTRY established clinical equivalence through the FDA's 505(b)(2) approval pathway," inaccurately conveys that the 505(b)(2) approval pathway leads to a determination of clinical equivalence. Even if Curium could argue that the express

language of these claims is not technically false, the net impression of Curium's consistent link between equivalence and FDA approval is unambiguous; the only reasonable interpretation of Curium's advertising is that the FDA has issued a determination that BEXLUTRY is equivalent to LUTATHERA®—***when, in fact, it has not***.

14. The term "radioligand equivalent" is particularly misleading because it is, on information and belief, a term of Curium's own invention. To help seed confusion in the market as to whether the FDA has issued any finding of equivalence between BEXLUTRY and LUTATHERA®, Curium pervasively refers to its product as a "radioligand equivalent." This is not a term adopted by the FDA. Instead, on information and belief, it is a term that initially appeared earlier this year in connection with an opinion article for which Curium funded the medical writing support.

15. In response to the article's proposed use of the term "radioligand equivalent" to cover radiopharmaceutical therapies that the FDA approved through the Section 505(b)(2) pathway, concerned members of the medical community submitted a letter to the editor of the medical journal in which the opinion article appeared. The letter warned that "the term radioligand equivalent implies an FDA recognized equivalence that has neither been evaluated nor established," and that use of "[t]his terminology risks confusing clinicians because it appropriates an established FDA regulatory concept [(i.e., therapeutic equivalence)] for a fundamentally different purpose."[3]

[3] *See* Shaojun Zhu et al., *Comment on FDA Approval Pathways*, J. Nuclear Med. (Sept. 3, 2026), https://doi.org/10.2967/jnumed.126.273516.

16. Despite this clear warning, Curium actively promoted the article it funded—and with it the use of the misleading term "radioligand equivalent"—in paid advertising in a newsletter associated with a prominent academic journal within the field of nuclear medicine.

17. Unfortunately, Curium has been successful in seeding the market with the confusing term "radioligand equivalent"—and with it the mistaken impression that the FDA has determined BEXLUTRY is a radioligand equivalent, or that it is equivalent in some other capacity, to LUTATHERA®. For instance, ChatGPT indicates that the "FDA's approval specifically establishes Bexlutry as a radioligand equivalent," and Google Gemini inaccurately characterizes BEXLUTRY as a "therapeutic equivalent" that has been "approved by the FDA as an equivalent treatment." Other leading AI platforms such as Claude and Grok generate similarly false responses.

18. Beyond Curium's false messaging concerning an FDA finding of equivalence, Curium's messaging that BEXLUTRY has "equivalent clinical benefits," has "the same clinical benefits," or has established "clinical equivalence" to LUTATHERA® further conveys the unambiguously false message that Curium has reliable studies supporting those statements. The only publicly available information that Curium cites in support of these assertions, however, consists of the NETTER-1 and ERASMUS studies on which ADACAP relied for approval of LUTATHERA®, LUTATHERA®'s and BEXLUTRY's Prescribing Information (respectively, the "LUTATHERA® PI" and "BEXLUTRY PI"), and the FDA's Orange Book[4]—none of which

[4] Pursuant to Congressional mandate, *see* 21 U.S.C. § 355(j)(7)(A)(i)(I)–(III), the FDA lists all approved drugs in a publication called *Approved Drug Products with Therapeutic Equivalence Evaluations*, also known as the "Orange Book." *See* Food & Drug Admin., *Approved Drug Products with Therapeutic Equivalence Evaluations* (Orange Book) (46th ed. 2026), https://www.fda.gov/downloads/drugs/developmentapprovalprocess/UCM071436.pdf [hereinafter Orange Book]. For a more detailed discussion of the Orange Book, *see infra*, ¶ 48.

supports comparative claims of equivalence. Further, Plaintiffs have not seen Curium cite to a single study directly comparing BEXLUTRY to LUTATHERA® and reliably supporting a finding of "clinical equivalence."

19. Curium's false advertising deprives HCPs and patients of the truthful information they need to make effective prescribing decisions. LUTATHERA® and BEXLUTRY are complex cancer treatments for which accurate and precise information concerning the nature and reliability of the products is paramount. By falsely convincing HCPs and patients that the FDA has determined BEXLUTRY is equivalent to LUTATHERA®—a treatment HCPs have come to trust—Curium instills a false sense of confidence in its product and discourages HCPs and patients from further investigation. Curium's advertisements thereby encourage HCPs to switch their patients from LUTATHERA® to BEXLUTRY, when they would not have otherwise done so. At the very least, Curium's false advertisements pique initial interest and induce HCPs to consider BEXLUTRY as an alternative to LUTATHERA®, when they might not otherwise have done so.

20. Plaintiffs seek preliminary and permanent injunctive relief barring Curium from continuing to disseminate the challenged advertising or any materially similar advertising. Plaintiffs also seek damages and all other relief available under the Lanham Act and Massachusetts unfair-competition law.

## **THE PARTIES**

21. Plaintiff Advanced Accelerator Applications USA, Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 57 E. Willow Street, Millburn, NJ 07041. ADACAP is an indirect, 99%-owned subsidiary of Novartis AG.

22. ADACAP is in the business of creating, developing, and bringing to market drug therapies that benefit patients suffering from serious diseases, including targeted radioligand

therapies for the treatment of cancer. LUTATHERA® is one such treatment. ADACAP markets, sells, and distributes LUTATHERA® in this District and throughout the United States.

23. Plaintiff Novartis Pharmaceuticals Corporation is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 59 Route 10, East Hanover, New Jersey 07936. Novartis Pharmaceuticals Corporation is a wholly owned subsidiary of Novartis AG.

24. Novartis Pharmaceuticals Corporation assists in the marketing of LUTATHERA® in this District and throughout the United States.

25. On information and belief, Defendant Curium US LLC is a limited liability company organized and existing under the laws of Delaware, with its principal place of business at 111 West Port Plaza Drive, Suite 800, St. Louis, MO 63146, and a global headquarters at 2 Seaport Ln., Boston, MA 02210.

26. On information and belief, Defendant Curium US Holdings LLC is a limited liability company organized and existing under the laws of Delaware, with its principal place of business at 111 West Port Plaza Drive, Suite 800, St. Louis, MO 63146, and a global headquarters at 2 Seaport Ln., Boston, MA 02210.

27. On information and belief, Curium US LLC is a wholly owned subsidiary of Curium US Holdings LLC. As the marketing authorization holder for BEXLUTRY, Curium US LLC owns the approved license to sell and market BEXLUTRY. In addition, on information and belief, Curium US LLC and Curium US Holdings LLC collaborated to create, develop, manufacture, bring to market, and promote BEXLUTRY.

## JURISDICTION AND VENUE

28. This Court has original jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Plaintiffs' claims under

Mass. Gen. Laws Ann. ch. 93A, §§ 2, 11 and Massachusetts common law pursuant to 28 U.S.C. § 1367(a).

29. This Court has personal jurisdiction over Curium US LLC because its contacts with the Commonwealth of Massachusetts are sufficiently continuous and systematic as to render it at home in this forum, including because, on information and belief:

(i) Curium US LLC's global headquarters are located in Boston, Massachusetts;

(ii) Curium US LLC targeted the "biotech hub" of Boston for its global headquarters because it is "strategically located between Curium's manufacturing sites in the United States (U.S.) and Europe";[5]

(iii) Curium US LLC helped to coordinate and disseminate a significant portion of the challenged marketing strategy for BEXLUTRY from Boston, including several false claims contained in a press release originating from "Boston, MA," one of which was attributed directly to the CEO of Curium US LLC;

(iv) Curium US LLC has specifically targeted Massachusetts physicians, pharmacies, hospitals, and other HCPs with its BEXLUTRY advertisements, including online materials accessible from Massachusetts;

(v) Curium US LLC has made BEXLUTRY available for prescription and HCPs have prescribed or can prescribe BEXLUTRY to Massachusetts patients; and

---

5 *Curium Consolidates New Biopharma Business and Sets Up Global Headquarters in Boston, Massachusetts*, Curium (Nov. 17, 2025), https://www.curiumpharma.com/2025/11/17/boston-headquarters-biopharma/.

(vi) Curium US LLC has entered contracts with Massachusetts entities, including suppliers and distributors.

30. This Court has personal jurisdiction over Curium US Holdings LLC because its contacts with the Commonwealth of Massachusetts are sufficiently continuous and systematic as to render it at home in this forum, including because, on information and belief:

(i) Curium US Holdings LLC's "principal executive offices" are located at 2 Seaport Ln. Boston, MA 02210;[6]

(ii) Curium US Holdings LLC's global headquarters are located in Boston, Massachusetts;

(iii) Curium US Holdings LLC targeted the "biotech hub" of Boston for its global headquarters because it is "strategically located between Curium's manufacturing sites in the United States (U.S.) and Europe";[7]

(iv) Curium US Holdings LLC helped to coordinate and disseminate a significant portion of the challenged marketing strategy for BEXLUTRY from Boston, including several false claims contained in a press release originating from "Boston, MA," one of which was directly attributed to the CEO of Curium US Holdings LLC;

(v) Curium US Holdings LLC recently entered a nearly $8 billion definitive agreement to acquire Lantheus Holdings, Inc. ("Lantheus"), a radiopharmaceutical company that has its principal place of business at 201 Burlington Road, South Building, Bedford, Massachusetts 01730 (which remains pending); the acquisition of Lantheus, a subsidiary of which has recently developed a generic version of LUTATHERA® not yet available in

---

6 *See* Lantheus Holdings, Inc., *Preliminary Proxy Statement* (Schedule 14A), at 30 (Aug. 26, 2026), https://www.sec.gov/Archives/edgar/data/1521036/000119312526365886/d180727dprem14a.htm.

7 *See* Curium, *supra* note 5.

the market, relates to the current state of the market for lutetium-based NETs therapies;

(vi) Curium US Holdings LLC has specifically targeted Massachusetts physicians, pharmacies, hospitals, and other HCPs with its BEXLUTRY advertisements, including online materials accessible from Massachusetts; and

(vii) Curium US Holdings LLC has entered contracts with Massachusetts entities, including suppliers and distributors.

31. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2) because Defendants are at home in this District, and either a substantial part of the events or omissions giving rise to the claims occurred in this District or a substantial part of property that is the subject of the action is situated in this District.

## FACTUAL ALLEGATIONS

### PLAINTIFFS AND LUTATHERA®

32. Plaintiffs are leading pharmaceutical companies that develop life-saving medications that improve the lives of patients suffering from debilitating diseases, including rare cancers. One such medication is LUTATHERA®, which is used to treat some of the over 100,000 patients in the United States living with a rare form of cancer—GEP-NETs.[8]

33. GEP-NETs are potentially life-threatening tumors that form in the pancreas or other parts of the gastrointestinal tract. Metastatic, hormonally active pancreatic GEP-NETs are particularly dangerous; in 2019, the overall five-year survival rate for patients diagnosed with

8 *See* Sheila D. Rustgi et al., *Initiation of Somatostatin Analogues for Neuroendocrine Tumor Patients: A Cost-Effectiveness Analysis*, 21 BMC Cancer, art. 597, at 2 (2021) ("Nearly 200,000 Americans have gastroenteropancreatic neuroendocrine tumors (GEP-NETs)").

pancreatic GEP-NETs was reported as approximately 38%.[9] Treatment of GEP-NETs is extremely difficult, and patients historically had very few treatment options when traditional treatments failed to stop the tumor growth.

34. In 2016, ADACAP submitted to the FDA an NDA for a ground-breaking new drug, LUTATHERA® (lutetium Lu 177 dotatate). LUTATHERA® was the first ever peptide receptor radioligand therapy to seek approval for the treatment of GEP-NETs. LUTATHERA® pioneered a new method of treatment[10] using a combination of a radioactive isotope and a targeting molecule (called a ligand), to deliver radiation directly to cancer cells. Specifically, LUTATHERA® combines the radioactive isotope Lu-177 with a ligand called dotatate. The dotatate component attaches to somatostatin receptors on the patient's tumors and the Lu-177 releases beta radiation that damages and kills the tumor cells, while limiting harm to nearby healthy tissue.

35. ADACAP supported its FDA application with the NETTER-1 study (supported by the ERASMUS study), which showed, among other things, a statistically significant improvement in progression-free survival in patients taking LUTATHERA®.[11]

36. On January 26, 2018, the FDA approved LUTATHERA® for the treatment of "somatostatin receptor positive GEP-NETs including foregut, midgut, and hindgut neuroendocrine

---

9 *See* Eva Lesén et al., *Treatment Patterns and Survival Among Patients with Metastatic Gastroenteropancreatic Neuroendocrine Tumours in Sweden - a Population-Based Register-Linkage and Medical Chart Review Study,* 10 J. Cancer 6876, 6877 (2019).

10 *See* NCI Staff, *FDA Approves New Treatment for Certain Neuroendocrine Tumors*, Nat'l Cancer Inst. (Feb. 8, 2018), https://www.cancer.gov/news-events/cancer-currents-blog/2018/lutathera-fda-gastrointestinal-nets.

11 *Lutathera Prescribing Information* §§ 14.1, tbl. 9, at 19; 14.2, at 20 (Advanced Accelerator Applications USA, Inc. Nov. 2024), https://www.accessdata.fda.gov/drugsatfda_docs/label/2024/208700Orig1s032lbl.pdf [hereinafter Lutathera PI].

tumors in adults."[12] The approval was a sea change in the treatment of GEP-NETs. The chief of the National Cancer Institute's Endocrine Oncology Branch called LUTATHERA® "a major advance,"[13] and Cancer Discovery, the journal of the American Association for Cancer Research, quoted practitioners lauding the drug as a "game changer" for a "huge, unmet need."[14] In 2024, the FDA expanded the indications of LUTATHERA®, approving the drug for the treatment of "pediatric patients 12 years and older with somatostatin receptor-positive gastroenteropancreatic neuroendocrine tumors (GEP-NETs), including foregut, midgut, and hindgut neuroendocrine tumors."[15] Since its approval, LUTATHERA® has helped to treat over 20,000 patients suffering from GEP-NETs.

37. Although radioligand therapies can be life-saving treatments, proper dosage and administration are crucial to ensure these medications are safe and can effectively treat GEP-NETs.[16] Dosing is particularly complex because Lu-177—a radioactive isotope and key ingredient in LUTATHERA®—begins decaying from the moment it is manufactured. As a result, to ensure a patient receives the correct prescribed dosage, HCPs must order a dose intended for a specific date and time of administration. Plaintiffs' manufacturing site then supplies the exact infusion volume needed to ensure that by the time the treatment reaches the HCP and patient for infusion, the treatment contains the correct amount of Lutetium 177 dotatate. This treatment is "ready to use" in the sense that, for the majority of patients, there is no need for dose manipulation at the

---

12 *See* Food & Drug Admin., *NDA 208700 Approval Letter* 1 (Jan. 26, 2018), https://www.accessdata.fda.gov/drugsatfda_docs/nda/2018/208700Orig1s000Approv.pdf.

13 *See* NCI Staff, *supra* note 10.

14 *See* Catherine Caruso, *Lutetium Lu 177 Dotatate Approved by FDA*, 8 Cancer Disc. OF2 (2018) (quoting Thorvardur Halfdanarson, M.D., Mayo Clinic).

15 Lutathera PI, *supra* note 11, at 1.

16 *See id.* §§ 2.1–2.2, 2.4–2.5, at 2–6.

site of administration. Given the importance of these drugs and the care with which they must be administered, clear and accurate information in promotional materials is critical.

**CURIUM AND BEXLUTRY**

38. Founded in 2017, Curium is a group of pharmaceutical companies that focus on nuclear medicine and radiopharmaceuticals.[17]

39. On September 14, 2026, Curium announced that the FDA had approved BEXLUTRY, Curium's radiolabeled somatostatin analog for use in the treatment of adults with GEP-NETs.[18] Until the FDA's approval of BEXLUTRY, LUTATHERA® was the only FDA-approved radioligand therapy for treatment of GEP-NETs on the market. LUTATHERA® and BEXLUTRY remain the only two drugs available in the market. Although on September 21, 2026, the FDA approved an abbreviated new drug application ("ANDA") for a generic lutetium Lu-177 dotatate therapy called BRAVNETSA (submitted by a subsidiary of Lantheus), BRAVNETSA remains unavailable as of the date of this complaint.

40. Curium submitted BEXLUTRY for FDA approval through the FDA's Section 505(b)(2) NDA pathway, which is one of three pathways available under Section 505 of the FD&C Act.[19] To obtain approval for BEXLUTRY, Curium relied on the existing clinical evidence for

---

17 *See IBA Molecular and Mallinckrodt Nuclear Medicine LLC to Create a New, World-Class Radiopharmaceutical Company: Curium*, Curium (Apr. 6, 2017), https://www.curiumpharma.com/iba-molecular-and-mallinckrodt-nuclear-medicine-llc-to-create-a-new-world-class-radiopharmaceutical-company-curium/ [hereinafter Curium Founding Press Release]; *Our History and Heritage: A Century of Combined Legacy*, Curium, https://www.curiumpharma.com/about/our-history/ (last visited Oct. 14, 2026).

18 *See* Curium, *Curium Announces FDA Approval of BEXLUTRY Lutetium Lu 177 Dotatate Injection for Adults with SSTR-Positive GEP-NETs* (Sept. 14, 2026), https://www.curiumpharma.com/2026/09/14/fda-approval-bexlutry/ [hereinafter September Press Release].

19 *See generally* 21 U.S.C. § 355(b)(1)–(2), (j) (2024).

LUTATHERA®, including LUTATHERA®'s Phase III NETTER-1 efficacy trial and ERASMUS clinical study. BEXLUTRY's PI therefore cites the same studies ADACAP used in connection with its NDA application for LUTATHERA®—the NETTER-1 and ERASMUS studies—as the studies establishing BEXLUTRY's efficacy and safety.[20]

**THE FDA'S DRUG APPROVAL PATHWAYS AND THE REGULATORY FRAMEWORK FOR EQUIVALENCE**

41. Section 505 of the FD&C Act, as amended by the Drug Price Competition and Patent Term Restoration Act of 1984 (the "Hatch-Waxman Amendments"), establishes three distinct routes to FDA approval of a drug product: (1) a "stand-alone" NDA under Section 505(b)(1); (2) an NDA described in Section 505(b)(2) (a "505(b)(2) application"); and (3) an ANDA under Section 505(j). *See* 21 U.S.C. § 355(b)(1), (b)(2), (j). The pathways differ fundamentally in what an applicant must show and, critically, in what the FDA does—and does not—determine about the relationship between the approved product and any previously approved drug.

42. ***Section 505(b)(1).*** A stand-alone 505(b)(1) NDA must contain "full reports of investigations" conducted that support safety and effectiveness, and those investigations must have been conducted by or for the applicant or be investigations to which the applicant has a right of reference or use. *See* 21 U.S.C. § 355(b)(1)(A); 21 C.F.R. § 314.3(b). This is the pathway through which ADACAP obtained approval of LUTATHERA® based on the NETTER-1 and ERASMUS clinical studies.

---

[20] *Bexlutry Prescribing Information* §§ 14.1–14.2, at 17–19 (Curium US LLC Sept. 2026), https://www.accessdata.fda.gov/drugsatfda_docs/label/2026/218525Orig1s000lbl.pdf [hereinafter Bexlutry PI].

43. ***Section 505(b)(2).*** A 505(b)(2) application is likewise an NDA that must contain full reports of investigations of safety and effectiveness, but at least some of the information required for approval comes from studies not conducted by or for the applicant and to which the applicant has no right of reference—for example, published literature or the FDA's prior finding of safety and effectiveness for a previously approved "listed drug." *See* 21 U.S.C. § 355(b)(2); 21 C.F.R. § 314.54. According to the FDA, "[a]lthough the 505(b)(2) application may rely, in part, on a finding of safety and/or effectiveness for another listed drug, the requirements for approval of these applications do not necessarily encompass the considerations relevant to evaluating whether the products are therapeutically equivalent to the listed drug upon which they rely."[21]

44. ***Section 505(j).*** By contrast, an ANDA is the abbreviated pathway for a generic "duplicate" of a previously approved reference listed drug ("RLD"). An ANDA applicant must show that its product is the same as the RLD with respect to active ingredient(s), conditions of use, route of administration, dosage form, strength, and labeling (with limited permissible differences), and that it is bioequivalent to the RLD. *See* 21 U.S.C. § 355(j)(2)(A), (j)(4). Unlike an NDA, an ANDA generally does not require new clinical investigations to establish safety and effectiveness; instead, the applicant must demonstrate that its product meets specified requirements for sameness and bioequivalence to the RLD. *See* 21 U.S.C. § 355(j)(2)(A). For injectable products, an ANDA must also match the RLD's formulation, subject to narrow exceptions. *See* 21 C.F.R. § 314.94(a)(9)(iii).

45. ***FDA will generally refuse to file a 505(b)(2) application for a product that could be approved under Section 505(j).*** The two abbreviated pathways for drug approval are not interchangeable at the applicant's election. The FDA's regulations provide that the agency may

[21] Food & Drug Admin., *Evaluation of Therapeutic Equivalence*, *supra* note 2, at 5.

refuse to file an NDA that "is submitted as a 505(b)(2) application for a drug that is a duplicate of a listed drug and is eligible for approval under section 505(j)." 21 C.F.R. § 314.101(d)(9). Consistent with that regulation, the FDA has long instructed that 505(b)(2) applications "should not be submitted for duplicates of approved products that are eligible for approval under 505(j),"[22] and its August 2026 guidance states that the FDA "generally will refuse to file a 505(b)(2) application for a drug product that is a duplicate of a listed drug and eligible for approval under section 505(j)."[23] Accordingly, a product that proceeds through the 505(b)(2) pathway is, by regulatory design, ordinarily one that differs from the listed drug in some respect that places it outside the ANDA pathway—not a generic duplicate.

46. ***Pharmaceutical equivalence, bioequivalence, and therapeutic equivalence.*** The FDA uses three defined terms to describe the equivalence relationship between approved drug products. "Pharmaceutical equivalents" are products in identical dosage forms and routes of administration that contain identical amounts of the identical active ingredient and meet the identical compendial or other applicable standards of identity, strength, quality, and purity. 21 C.F.R. § 314.3(b). "Bioequivalence" is "the absence of a significant difference in the rate and extent to which the active ingredient or active moiety in pharmaceutical equivalents or pharmaceutical alternatives becomes available at the site of drug action when administered at the same molar dose under similar conditions in an appropriately designed study." *Id.* "Therapeutic

---

[22] *See* Food & Drug Admin., *Applications Covered by Section 505(b)(2)*, at 3–4 (Oct. 1999) (draft guidance), https://www.fda.gov/files/drugs/published/Applications-Covered-by-Section-505(b)(2).pdf (citing 21 CFR 314.101(d)(9)); *see also* Food & Drug Admin., *Levothyroxine Sodium Products: Enforcement of August 14, 2001 Compliance Date and Submission of New Applications* 4 n.4 (July 2001) (guidance for industry), https://www.fda.gov/media/72341/download.

[23] *See* Food & Drug Admin., *Determining Whether to Submit an ANDA or a 505(b)(2) Application* 6 (Aug. 2026) (guidance for industry), https://www.fda.gov/media/160054/download.

equivalents," in turn, are "approved drug products that are pharmaceutical equivalents for which bioequivalence has been demonstrated, and that can be expected to have the same clinical effect and safety profile when administered to patients under the conditions specified in the labeling." *Id.*

47. These determinations track the approval pathways. A scientific premise of the Hatch-Waxman Amendments is that a product approved in an ANDA is presumed to be therapeutically equivalent to its RLD because the requirements for ANDA approval are based on sameness and include the data and information that establish therapeutic equivalence; the FDA therefore assigns a therapeutic equivalence rating to an ANDA product at approval without any request from the applicant. A 505(b)(2) product, by contrast, "will not necessarily be rated therapeutically equivalent to the listed drug it references," and "may not necessarily be bioequivalent, pharmaceutically equivalent, and/or therapeutically equivalent to the listed drug(s) relied upon."[24] As the FDA has explained, "[b]ecause 505(b)(2) applications are not required to demonstrate pharmaceutical equivalence or bioequivalence," and because the requirements for their approval "do not necessarily encompass the considerations relevant to evaluating whether the products are therapeutically equivalent," the FDA does not routinely evaluate 505(b)(2) products for therapeutic equivalence upon approval.[25] Applicants seeking a therapeutic-equivalence designation for a drug approved under Section 505(b)(2) must separately request an evaluation through a citizen's petition under 21 C.F.R. §§ 10.25(a) and 10.30 or, where eligible, through the

---

24 *See* Food & Drug Admin., *Determining Whether to Submit an ANDA or a 505(b)(2) Application* 3, 5 n.20 (Aug. 2026) (draft guidance for industry), https://www.fda.gov/media/194279/download.

25 *See* Food & Drug Admin., *Determining Whether to Submit an ANDA or a 505(b)(2) Application*, *supra* note 23, at 5, 15; *see also* 21 U.S.C. § 355(j)(7)(A)(v)(I).

statutory request procedure set forth in 21 U.S.C. § 355(j)(7)(A)(v)(I).[26] In such cases, the FDA will conduct a therapeutic equivalence evaluation and issue a finding.

48. ***TE codes, A ratings, and substitution.***[27] Pursuant to congressional mandate, *see* 21 U.S.C. § 355(j)(7)(A)(i)(I)–(III), FDA lists all approved drugs in the *Approved Drug Products with Therapeutic Equivalence Evaluations*, also known as the "Orange Book." Among other things, the Orange Book lists each approved drug product and identifies its active ingredients, proprietary name, dosage form and strength, applicable patents and exclusivity periods (if any), and therapeutic equivalence rating or "TE Code" (if any).

49. The Orange Book distinguishes among products with an "A"-rated TE Code, products with a "B" rating, and products without a therapeutic equivalence rating. An "A" rating indicates that the FDA considers the product therapeutically equivalent to other pharmaceutically equivalent products, while a "B" rating ***indicates*** that the FDA does not consider the product therapeutically equivalent because actual or potential bioequivalence problems have not been resolved. A product without a TE Code has not received an affirmative FDA determination of therapeutic equivalence.

50. A principal benefit of approval under an ANDA is to receive an "A"-rated TE Code, denoting a drug as therapeutically equivalent in the Orange Book. With an A-rating in the Orange Book, the generic drug product would be eligible in most states to be automatically substituted for the approved reference product at the pharmacy level. Many states have adopted laws encouraging or permitting pharmacists to substitute drug products, and the FDA's TE evaluations serve as the reference point for those substitution decisions. Only products classified as therapeutically

---

26 *See id.* at 12.

27 *See generally* Orange Book, *supra* note 4, Preface §§ 1.1–1.7, at vi–xx.

equivalent can, in the FDA's judgment, be substituted "with the full expectation that the substituted product will produce the same clinical effect and safety profile as the prescribed product."[28] An "A"-rated generic is thus generally eligible for automatic substitution for its RLD; a product without a TE Code has not been affirmatively identified by the FDA as therapeutically equivalent to its RLD for purposes of substitution.

51. Whereas the FDA sometimes designates drugs as therapeutic equivalents, pharmaceutical equivalents, or bioequivalents, the FDA does not formally designate drugs approved under the FD&C Act as being "clinically equivalent," and "radioligand equivalent" is a wholly made-up term. Section 1.2 of the Orange Book Preface, "Therapeutic Equivalence-Related Terms," defines pharmaceutical equivalents, pharmaceutical alternatives, therapeutic equivalents, bioavailability, and bioequivalence.[29] "Clinical equivalence" and "radioligand equivalent" are not included in that list of FDA-recognized terms.

**BEXLUTRY AND LUTATHERA®**

52. This framework is directly reflected in the market for lutetium Lu 177 dotatate. LUTATHERA® was approved under Section 505(b)(1) on an NDA containing the requisite safety and effectiveness data. BRAVNETSA (third-party Lantheus's product) was approved under Section 505(j) as a generic and, based on sameness to LUTATHERA®, received an "A" TE Code reflecting the FDA's determination that it is therapeutically equivalent to LUTATHERA®. Specifically, BRAVNETSA received an "AP" code, with the first letter of the code denoting therapeutic equivalence to LUTATHERA®, and the second letter of the code indicating the injectable (parenteral) nature of the product. BEXLUTRY, by contrast, was submitted and

---

28 *See* Food & Drug Admin., *Determining Whether to Submit an ANDA or a 505(b)(2) Application*, *supra* note 23, at 3.

29 *See* Orange Book, *supra* note 4, Preface § 1.2, at vii–ix.

approved under Section 505(b)(2), and not Section 505(j), consistent with differences between BEXLUTRY and LUTATHERA® that place it outside the ANDA pathway. Although BEXLUTRY and LUTATHERA® contain the same active ingredient, their formulations differ materially. According to their PIs, BEXLUTRY contains sodium ascorbate and ethanol, whereas LUTATHERA® contains ascorbic acid, acetic acid, sodium acetate, gentisic acid, sodium hydroxide, and sodium chloride, none of which is listed in BEXLUTRY's formulation.[30] These differences are significant because, subject to limited exceptions, FDA regulations require injectable drugs seeking approval through the ANDA pathway for generic drugs to contain the same inactive ingredients, in the same concentrations, as the reference listed drug. *See* 21 C.F.R. § 314.94(a)(9)(iii).

53. The FDA has not publicly issued any determination that BEXLUTRY and LUTATHERA® are equivalent. Further, on information and belief, the FDA has not found BEXLUTRY and LUTATHERA® to be therapeutic equivalents, pharmaceutical equivalents, bioequivalents, or clinically equivalent.

54. The FDA approval letter for BEXLUTRY did not make an express finding of therapeutic equivalence, clinical equivalence, pharmaceutical equivalence, bioequivalence, or any other type of equivalence, between BEXLUTRY and LUTATHERA®.[31] Similarly, the BEXLUTRY PI does not include any finding that BEXLUTRY is "equivalent" to LUTATHERA®.[32]

---

30 *Compare* Bexlutry PI, *supra* note 20, § 11, at 15, *with* Lutathera PI, *supra* note 11, § 11, at 15.

31 *See generally* Food & Drug Admin., *NDA 218525 Approval Letter* (Sept. 14, 2026), https://www.accessdata.fda.gov/drugsatfda_docs/appletter/2026/218525Orig1s000ltr.pdf.

32 *See generally* Bexlutry PI, *supra* note 20.

55. BEXLUTRY does not have a TE Code in the Orange Book, as shown below.

| Mkt. Status | Active Ingredient | Proprietary Name | Appl. No. | Dosage Form | Route | Strength | TE Code | RLD | RS | Applicant Holder |
|---|---|---|---|---|---|---|---|---|---|---|
| RX | LUTETIUM LU-177 DOTATATE | BEXLUTRY | N218525 | SOLUTION | INTRAVENOUS | 10mCi/ML | | RLD | RS | CURIUM US LLC |
| Mkt. Status | Active Ingredient | Proprietary Name | Appl. No. | Dosage Form | Route | Strength | TE Code | RLD | RS | Applicant Holder |

56. By contrast, Lantheus's product BRAVNETSA, which was approved through the Section 505(j) pathway, has an "AP" TE Code—which is the same TE code listed for LUTATHERA® and indicates that BRAVNETSA is an injectable that is therapeutically equivalent to LUTATHERA®.

| Mkt. Status | Active Ingredient | Proprietary Name | Appl. No. | Dosage Form | Route | Strength | TE Code | RLD | RS | Applicant Holder |
|---|---|---|---|---|---|---|---|---|---|---|
| RX | LUTETIUM LU-177 DOTATATE | BRAVNETSA | A217060 | SOLUTION | INTRAVENOUS | 10mCi/ML | AP | | | LANTHEUS MEDICAL IMAGING INC |
| Mkt. Status | Active Ingredient | Proprietary Name | Appl. No. | Dosage Form | Route | Strength | TE Code | RLD | RS | Applicant Holder |

| Mkt. Status | Active Ingredient | Proprietary Name | Appl. No. | Dosage Form | Route | Strength | TE Code | RLD | RS | Applicant Holder |
|---|---|---|---|---|---|---|---|---|---|---|
| RX | LUTETIUM LU-177 DOTATATE | LUTATHERA | N208700 | SOLUTION | INTRAVENOUS | 10mCi/ML | AP | RLD | RS | ADVANCED ACCELERATOR APPLICATIONS USA INC |
| Mkt. Status | Active Ingredient | Proprietary Name | Appl. No. | Dosage Form | Route | Strength | TE Code | RLD | RS | Applicant Holder |

Products on NDA 208700

CSV Excel Print

| Drug Name | Active Ingredients | Strength | Dosage Form/Route | Marketing Status | TE Code | RLD | RS |
|---|---|---|---|---|---|---|---|
| LUTATHERA | LUTETIUM LU-177 DOTATATE | 10mCi/ML | SOLUTION;INTRAVENOUS | Prescription | AP | Yes | Yes |

Showing 1 to 1 of 1 entries

Approval Date(s) and History, Letters, Labels, Reviews for NDA 208700

Labels for NDA 208700

Therapeutic Equivalents for NDA 208700

LUTATHERA
SOLUTION;INTRAVENOUS; 10mCi/ML
TE Code = AP

CSV Excel Print

| Drug Name | Active Ingredients | Strength | Dosage Form/Route | Marketing Status | RLD | TE Code | Application No. | Company |
|---|---|---|---|---|---|---|---|---|
| BRAVNETSA | LUTETIUM LU-177 DOTATATE | 10mCi/ML | SOLUTION;INTRAVENOUS | Prescription | No | AP | 217060 | LANTHEUS MEDICAL |
| LUTATHERA | LUTETIUM LU-177 DOTATATE | 10mCi/ML | SOLUTION;INTRAVENOUS | Prescription | Yes | AP | 208700 | AAA USA INC |

## CURIUM'S FALSE ADVERTISING FOR BEXLUTRY

***<u>Curium's False Claims that the FDA Has Made an Equivalence Determination.</u>***

57. On or around September 14, 2026, when Curium received FDA approval to market and sell BEXLUTRY, Curium began to advertise BEXLUTRY through a variety of channels, including press releases, Curium's HCP-facing website (www.bexlutryhcp.com), Curium's patient-facing website (www.bexlutry.com), and, on information and belief, directly to HCPs through Curium's sales representatives.

58. Curium's marketing of BEXLUTRY is principally built around the false claim that the FDA made a finding that BEXLUTRY is "clinically equivalent" to, or a "radioligand equivalent" of, LUTATHERA®. As depicted on the next page, Curium's "About BEXLUTRY" webpage, at www.bexlutryhcp.com, prominently displays, in capitalized and bolded typeface, the heading "THE **FDA-APPROVED** LUTETIUM Lu 177 DOTATATE **WITH EQUIVALENT CLINICAL BENEFITS**" (emphasis added). That heading is followed by claims that "BEXLUTRY is a **radioligand equivalent** with chemical, biological, and targeting characteristics comparable to the reference radioligand therapy" (emphasis added)—which, based on citations on

this webpage, is LUTATHERA®. That second statement is, in turn, followed by the claim that "BEXLUTRY **established clinical equivalence through the FDA's 505(b)(2) approval pathway**" (emphasis added).




59. These claims are literally false. The wording of the statements (starting with the opening words of the heading, "The FDA-Approved") unambiguously conveys that the FDA made a finding that BEXLUTRY and LUTATHERA® are equivalent—through a finding of "clinical equivalence," a determination that BEXLUTRY is a "radioligand equivalent," or a finding that BEXLUTRY has "equivalent clinical benefits." "Clinical equivalence," "radioligand equivalent," and "equivalent clinical benefits" are not formal FDA regulatory designations conferred through approval under the Section 505(b)(2) pathway. Indeed, the FDA does not use the term "radioligand equivalent" or make designations that a drug is a "radioligand equivalent" to an already approved drug. Similarly, the FDA does not use the term "clinical equivalence," and FDA approval through the 505(b)(2) pathway does not "establish[] clinical equivalence" as claimed.[33]

---

[33] *See* Food & Drug Admin., *Evaluation of Therapeutic Equivalence*, *supra* note 2, at 5.

60. Curium itself recognized that the 505(b)(2) pathway is specifically designed to obtain approval when products are *not* equivalent. In a public comment opposing ADACAP's citizen petition requesting that, in light of the uniquely complex and dynamic nature of radioligand therapeutics, the FDA Commissioner require data establishing pharmaceutical equivalence and bioequivalence for products relying on LUTATHERA® in 505(b)(2) applications,[34] Curium asserted that "the entire point of the 505(b)(2) NDA is to allow for differences between the listed drug and the proposed product."[35]

61. On information and belief, "radioligand equivalent" is a phrase that Curium invented to intentionally seed confusion in the market as to whether BEXLUTRY is equivalent to LUTATHERA®. The term first appeared in an article published online in a medical journal in April 2026, for which Curium funded the medical writing, entitled *The Equivalents Are Coming! Developing a Shared Nomenclature for Radiopharmaceutical Therapy of Neuroendocrine Tumors, Prostate Cancer, and Beyond*. The article proposed defining "radioligand equivalent" as a radiopharmaceutical therapy "approved through the 505(b)(2) pathway, distinct from a generic RPT approved through an [ANDA]."[36] The FDA has not recognized or endorsed this definition.

62. Curium promoted this article—along with the term "radioligand equivalent"—in paid advertising content published in the Society of Nuclear Medicine and Molecular Imaging's SmartBrief newsletter, as shown on the next page.

---

[34] *See* Advanced Accelerator Applications USA, Inc., *Citizen Petition*, Docket No. FDA-2024-P-1871, at 2–3, 7–8, 12–13 (Apr. 12, 2024).

[35] *See* Curium US LLC, *Comment on Citizen Petition*, Docket No. FDA-2024-P-1871, at 3 (May 1, 2025), https://downloads.regulations.gov/FDA-2024-P-1871-0008/attachment_1.pdf.

[36] Aman Chauhan et al., *The Equivalents Are Coming! Developing a Shared Nomenclature for Radiopharmaceutical Therapy of Neuroendocrine Tumors, Prostate Cancer, and Beyond*, 67 J. Nuclear Med. 1037, 1037 (2026).

This is a paid advertisement for SmartBrief readers.
The content does not necessarily reflect the view of SmartBrief or its Association partners.

**SmartBrief for Nuclear Medicine and MI Professionals**




## The Equivalents Are Coming! Developing a Shared Nomenclature for Radiopharmaceutical Therapy of Neuroendocrine Tumors, Prostate Cancer, and Beyond

In a recent publication, leading oncology and nuclear medicine experts discuss how the FDA's 505(b)(2) approval pathway is shaping the radioligand therapy landscape—and why more precise terminology will be important as the field expands.

**VIEW PUBLICATION**



Aman Chauhan, MD



Ken Herrmann, MD



Ghassan El-Haddad, MD



Andrew E. Hendifar, MD



Heloisa P. Soares, MD

## This publication highlights

- How the 505(b)(2) pathway enables approval of radioligand therapies based on pharmaceutical and clinical comparability
- The evolving terminology shaping the radioligand landscape and its importance for consistent scientific understanding
- Key distinctions between radioligand equivalents and generic radioligand therapies, and their implications for the treatment landscape

CURIUM™

© 2026 Curium US LLC. Curium™ and the Curium logo are trademarks of a Curium company.
All logos are the property of their respective owners.

63. The Curium-funded article prompted members of the medical community to sound the alarm on the use of the phrase "radioligand equivalent." For example, a published letter to the editor of the *Journal of Nuclear Medicine* cautions that because "the FDA's guidance explicitly states that products approved through the 505(b)(2) pathway may not necessarily be pharmaceutically equivalent, bioequivalent, or therapeutically equivalent to the referenced approved drug . . . the term radioligand equivalent implies an FDA recognized equivalence that has neither been evaluated nor established."[37] The letter further cautions that "[t]his terminology risks confusing clinicians because it appropriates an established FDA regulatory concept for a fundamentally different purpose."

64. Despite these early warnings that the term "radioligand equivalent" is misleading, Curium pervasively uses it in its marketing materials. The FAQ section of Curium's HCP-facing website explains that Curium defines the term in a manner similar to the definition in the Curium-funded article. Specifically, Curium's FAQs define "radioligand equivalent" as "a drug that the FDA has determined to have comparable physiochemical properties and binding affinity to a reference RLT, with efficacy and safety supported by clinical trials of the reference therapy." This definition's focus on "comparable" properties not only conflicts with the natural meaning of the term "equivalent" but also conflicts with the clear messages that Curium conveys through its marketing—namely that (1) BEXLUTRY is equivalent to LUTATHERA® and (2) the FDA has determined that to be so. Even if the definition were not inherently misleading, it is entirely separate from Curium's primary promotional materials and, therefore, does not remedy Curium's false messages of equivalence.

[37] *See* Zhu, *supra* note 3.

65. The context surrounding Curium's claims of radioligand and clinical equivalence underscores that the only reasonable interpretation of these claims is the false message that the FDA issued these respective findings of equivalence. For example, as shown below, three of the footnotes to Curium's "equivalence" statements cite to FDA-authored or FDA-approved documents.

**References**

1. BEXLUTRY. Prescribing information. Curium US LLC; 2026.
2. US Food and Drug Administration. *Approved Drug Products With Therapeutic Equivalence Evaluations*. 44th ed. 2024. Accessed April 13, 2026. https://www.fda.gov/drugs/drug-approvals-and-databases/approved-drug-products-therapeutic-equivalence-evaluations-orange-book
3. Lutathera. Prescribing information. Advanced Accelerator Applications USA Inc; 2024.
4. Data on file. Curium US LLC.
5. Curium submits New Drug Application for Lutetium Lu 177 Dotatate Injection. News release. Curium; July 9, 2024. Accessed April 28, 2026. https://www.curiumpharma.com/2024/07/09/lutetium-lu-177-dotatate-injection/
6. Referenced with permission from the NCCN Clinical Practice Guidelines in Oncology (NCCN Guidelines®) for Neuroendocrine and Adrenal Tumors V.1.2026. © National Comprehensive Cancer Network, Inc. 2026. All rights reserved. Accessed April 28, 2026. To view the most recent and complete version of the guideline, go online to NCCN.org. NCCN makes no warranties of any kind whatsoever regarding their content, use or application and disclaims any responsibility for their application or use in any way.

Bexlutry™
(lutetium Lu 177 dotatate injection)
for intravenous use

66. Specifically, footnotes 1 and 3 vaguely cite the BEXLUTRY and LUTATHERA® PIs, respectively, which are FDA-approved documents. However, these documents do not contain any finding that BEXLUTRY is equivalent to LUTATHERA®. As a result, they reinforce the connection between the FDA and findings of equivalence without providing any actual support for the proposition that the FDA made any such findings.

67. Footnote 2 is even more explicit in its tie between the FDA and Curium's advertising claims; the footnote cites the Orange Book. As noted above, when the FDA updated the Orange Book on September 28, 2026, it did so without listing a TE Code for BEXLUTRY.[38]

---

[38] *See* Orange Book, *supra* note 4 (BEXLUTRY, NDA No. 218525).

Until that update, which occurred approximately two weeks after Curium published its webpage, the Orange Book lacked ***any*** entry for BEXLUTRY at all. As a result, Curium's citation to the Orange Book similarly ties Curium's advertising claims of equivalence to the FDA but fails to support the proposition that the FDA made any such determination. It also reinforces Curium's false message of equivalence because it leaves the unambiguous impression that the Orange Book includes a TE code for BEXLUTRY, when it does not.

68. The false necessary implication that the FDA found any kind of equivalence between BEXLUTRY and LUTATHERA® is also communicated through Curium's use of language alluding to the regulatory definition of "therapeutic equivalence." As noted in Paragraph 46 above, an FDA finding of "therapeutic equivalence" requires predicate findings of, among other things, "pharmaceutical equivalency," "bioequivalence," and the same "clinical effect" and "safety profile." By using the phrase "clinical equivalence," Curium clearly alludes to "therapeutic equivalence" and "clinical effect" findings without explicitly claiming them, thereby creating the false impression that the FDA found BEXLUTRY to be therapeutically equivalent to LUTATHERA®.

69. Curium also notes on its "About BEXLUTRY" page that BEXLUTRY is a "radioligand **equivalent** with . . . chemical, **biological**, and targeting **characteristics** comparable to the reference radioligand therapy (RLT)" (emphasis added), which, again, unambiguously refers to LUTATHERA®, based on the webpage's citations to the LUTATHERA® PI. This reference to a "radioligand equivalent" and "biological . . . characteristics" alludes to the predicate finding of "bioequivalence," which the FDA makes in connection with therapeutic equivalence but has not found as to BEXLUTRY. Curium then cites, without explanation or qualification, to a press release describing Curium's NDA for BEXLUTRY, a clear attempt to further associate

"radioligand equivalen[cy]" and "comparable" "biological . . . characteristics" with the FDA approval process. These parallels contribute to the overall context of Curium's advertising and unambiguous message that BEXLUTRY is somehow equivalent to LUTATHERA®.

70. The claim that "BEXLUTRY is a radioligand equivalent with chemical, biological, and targeting characteristics comparable to the reference radioligand therapy (RLT)"—the only challenged equivalence claim on the "About BEXLUTRY" page that does not include an express reference to FDA approval—is sandwiched between two claims expressly discussing FDA approval, depicted in Paragraph 58 above and again below for additional reference. These additional claims discussing FDA approval, strategically placed around the reference to BEXLUTRY as a "radioligand equivalent," reinforce the false necessary implication that the FDA made a determination that BEXLUTRY and LUTATHERA® are "radioligand equivalent[s]."




71. In addition to Curium's false equivalence claims on its HCP-facing website for BEXLUTRY, Curium has made similar false claims in other advertising materials, conveying that the FDA has made a determination of equivalence, including the following:

- On the homepage of the HCP-facing website for BEXLUTRY, Curium has included the graphic on the following page, which advertises BEXLUTRY as "[t]he **FDA-approved** lutetium Lu 177 dotatate **radioligand equivalent** for adults with

SSTR+ GEP-NETs . . .” In close proximity to this statement, Curium repeatedly touts that BEXLUTRY has “the same clinical benefits” as LUTATHERA®. For example, the homepage states: “Delivering the **same clinical benefits**. BEXLUTRY provides the same mechanism of action, efficacy, safety, dosing, and administration as the reference RLT, supported by Curium’s non-carrier-added production process.” This context underscores the message of equivalence Curium intends to convey.




- In a September 14, 2026 Press Release, released from “Boston, MA” and announcing the FDA’s approval of BEXLUTRY, Curium stated that, “BEXLUTRY is the first **radioligand equivalent** for the treatment of GEP-NETs in adults and the first radioligand therapy from Curium™ **approved by the FDA**,” and that “BEXLUTRY is a **radioligand equivalent approved through the FDA’s 505(b)(2) pathway targeting LUTATHERA®** (lutetium Lu 177 dotatate), supported by published evidence and targeted bridging data that demonstrated a

similar biological and chemical profile to a previously approved radiopharmaceutical therapy." An excerpt of this press release is depicted below.[39]

> *BEXLUTRY is the first radioligand equivalent for the treatment of GEP-NETs in adults and the first radioligand therapy from Curium™ approved by the FDA*
>
> **(Boston, MA – 14 September, 2026)** – Curium™ announced today that the U.S. Food and Drug Administration (FDA) has approved its New Drug Application (NDA) for BEXLUTRY™ lutetium Lu 177 dotatate injection for the treatment of somatostatin receptor-positive gastroenteropancreatic neuroendocrine tumors (GEP-NETs), including foregut, midgut, and hindgut neuroendocrine tumors in adults.
>
> BEXLUTRY™ is a radioligand therapy designed to deliver targeted radiation to GEP-NETs by binding to somatostatin receptors commonly expressed on these tumors. NETs originate from neuroendocrine cells, which are specialized cells widely dispersed throughout the body's organs. The site of origin can vary because of the broad distribution of neuroendocrine cells. GEP-NETs represent 60-70% of NETs.
>
> BEXLUTRY™ is a radioligand equivalent approved through the FDA's 505(b)(2) pathway targeting LUTATHERA® (lutetium Lu 177 dotatate), supported by published evidence and targeted bridging data that demonstrated a similar biological and chemical profile to a previously approved radiopharmaceutical therapy.

72. These advertising claims (and any other similar claims that Curium has made or is making) are literally false or false by necessary implication for the same reasons that the claims on the "About BEXLUTRY" webpage are false—namely, they expressly communicate that the FDA has made a finding that BEXLUTRY is "clinically equivalent" or is a "radioligand equivalent" to LUTATHERA®, when the FDA has made no such findings (nor does it ever issue formal findings of that nature).

73. In the alternative, and at a minimum, Curium's claims of "equivalent clinical benefits" and "clinical equivalence," as well as Curium's characterization of BEXLUTRY as a "radioligand equivalent," are misleading because they falsely imply that the FDA made equivalence findings that it did not make, including a finding of "therapeutic equivalence."

***<u>Curium's False Claim That Studies Show BEXLUTRY is Clinically or Therapeutically Equivalent to LUTATHERA.</u>***

---

[39] *See also* September Press Release, *supra* note 18.

74. In its September 14, 2026, press release announcing the FDA's approval of BEXLUTRY, Curium claimed that "BEXLUTRY is a radioligand equivalent approved through the FDA's 505(b)(2) pathway targeting LUTATHERA® (lutetium Lu 177 dotatate), supported by published evidence and targeted bridging data that demonstrated a similar biological and chemical profile to a previously approved radiopharmaceutical therapy."[40]

75. By representing that BEXLUTRY's equivalence is supported by "published evidence" and "targeted bridging data," Curium conveys that reliable scientific evidence establishes the claimed equivalence. On information and belief, the "published evidence" that Curium's press release references are the results of the NETTER-1 and ERASMUS studies, which Curium used to support its 505(b)(2) approval by relying on and referencing LUTATHERA®. But the NETTER-1 and ERASMUS studies alone are not enough to substantiate comparative establishment claims like the ones Curium is making.

76. Curium has neither published nor cited to any comparative clinical studies that reliably demonstrate BEXLUTRY is either clinically or therapeutically equivalent to LUTATHERA®. On information and belief, there is no published evidence and targeted bridging data that reliably establish therapeutic or clinical equivalence between BEXLUTRY and LUTATHERA®, and Curium's claims are therefore false establishment claims.

77. Curium's FAQs—which, as noted, are divorced from its actual promotional statements—also concede that BEXLUTRY and LUTATHERA® are not truly equivalent. The FAQs state:

---

[40] *See id.*

**Can a radioligand equivalent differ from the reference RLT?** ^

Yes. While a radioligand equivalent like BEXLUTRY is designed to have comparable chemical, biological, and targeting characteristics, it may differ in aspects such as manufacturing process, formulation (inactive ingredients), or reimbursement or regulatory pathways.[3,4]

Entirely separate from its multiple and repetitive equivalence claims, Curium acknowledges that BEXLUTRY has only "comparable"—not "equivalent"—"chemical, biological, and targeting characteristics," and that it "may differ" from LUTATHERA® as to important "aspects such as manufacturing process, formulation (inactive ingredients), or reimbursement or regulatory pathways."

78. In addition, as shown on the following page, Curium's FAQs identify only the NETTER-1, NETTER-2, and ERASMUS studies in support of BEXLUTRY's efficacy and "clinical[] equivalen[cy] to the reference therapy." None of those studies supports the conclusion that BEXLUTRY is either therapeutically or clinically equivalent to LUTATHERA®. That BEXLUTRY's labeling reproduces LUTATHERA®'s clinical data reflects Curium's reliance on the FDA's prior findings for LUTATHERA®—a legal mechanism for approval—not any FDA comparison of the two products' clinical performance.

## Efficacy and safety

**What clinical studies support BEXLUTRY?**

NETTER-1, a phase 3, randomized, open-label, multicenter study, evaluated lutetium Lu 177 dotatate + octreotide 30 mg vs high-dose octreotide (60 mg) in 229 patients with well-differentiated, grade 1 and 2 advanced GEP-NETs after SSA progression.[1,14]

NETTER-2, a phase 3, randomized, open-label, multicenter study, evaluated lutetium Lu 177 dotatate + octreotide 30 mg vs high-dose octreotide (60 mg) in 226 newly diagnosed patients with metastatic or locally advanced grade 2 or 3 inoperable SSTR+ GEP-NETs.[2]

ERASMUS was an international, single-institution, open-label, expanded-access study that assessed objective response rate using prospectively defined RECIST criteria in adults with foregut, midgut, or hindgut GEP-NETs. Patients received lutetium Lu 177 dotatate (7.4 GBq [200 mCi] per cycle) every 6 to 13 weeks for up to 4 cycles, with long-term follow-up.[1]

**How is BEXLUTRY clinically equivalent to the reference therapy?**

BEXLUTRY was approved through the FDA's 505(b)(2) pathway, allowing it to leverage the established efficacy and safety demonstrated in the NETTER-1 and NETTER-2 trials, as well as the safety profile from the ERASMUS trial.[1,2,5,6] **See clinical data**.

**CURIUM'S CLAIMS ARE MATERIAL TO CONSUMERS**

79. Representations that the FDA determined a drug to be "equivalent" to another drug concern a fundamental characteristic of the drug and are material to HCPs, patients, treatment centers, and other participants in the market for radioligand therapies. This is particularly true where, as here, the challenged representations compare a newly approved product to an established and effective therapy.

80. The FDA uses the concepts of pharmaceutical equivalence, bioequivalence, and therapeutic equivalence in highly defined regulatory contexts. The FDA explicitly explains that drug products classified as therapeutically equivalent can be expected to have the same clinical

effect and safety profile when administered under the conditions specified in the labeling.[41] Therapeutic equivalence evaluations serve "as public health information and advice to state health agencies, prescribers, and pharmacists" and reflect the FDA's "scientific judgment" based on evidence.[42] The FDA's therapeutic-equivalence framework accordingly provides HCPs and treatment centers with an established and reliable regulatory basis for evaluating whether one approved drug product can be expected to perform clinically like another.

81. Here, Curium's false advertising claims that data show BEXLUTRY is "equivalent" to LUTATHERA® and that the FDA has approved BEXLUTRY as "equivalent" communicate inaccurate messages material to prescribing decisions. On information and belief, a representation that one prescription drug is "equivalent" to another prompts HCPs to treat those products as interchangeable and/or substitutable. Further, on information and belief, at a minimum, such a misrepresentation prompts HCPs to consider and review the data supporting BEXLUTRY's use when they might not otherwise have done so.

82. False representations of equivalence and, particularly, FDA findings of equivalence, are especially material because, on information and belief, HCPs are accustomed to the FDA's formal standards and classifications concerning drug equivalence, which bear on important considerations such as safety, efficacy, and clinical characteristics. A manufacturer's use of equivalence terminology in promoting a prescription drug therefore carries significance beyond a generalized statement that two products treat the same medical condition, influencing prescribing decisions and ultimately, in this case, the treatment of patients suffering from cancer.

---

[41] *See* Orange Book, *supra* note 4, Preface §§ 1.2–1.3, at vi–ix.

[42] *See id.* § 1.2, at v; § 1.4, at x.

Curium's decision to feature these equivalence claims prominently and repeatedly in its launch advertising further confirms their importance to the intended audience.

83. False representations of equivalence and FDA findings of equivalence are, on information and belief, also likely to influence the extent of health insurance coverage that insurers offer. To the extent an insurance provider believes the FDA has determined BEXLUTRY to be equivalent to LUTATHERA®, and BEXLUTRY is available at a lower cost than LUTATHERA®, that provider will be less inclined to extend adequate coverage for LUTATHERA®.

84. Even if claims of "clinical equivalence" or "the same clinical benefit" do not, strictly speaking, evoke the import of formal FDA standards like "therapeutic equivalence" does, Curium's false statements that data show BEXLUTRY has established "clinical equivalence" to or has "the same clinical benefit" as LUTATHERA® are related to an inherent aspect of the drugs at issue and material to prescribing decisions. Clinical benefit is among the central considerations in selecting a pharmaceutical therapy.[43] A representation that two products provide the same clinical benefits communicates vital information concerning the expected therapeutic consequences of selecting one product instead of the other. Such a representation influences an HCP's assessment of whether there is a clinical reason to prefer one therapy, whether switching or selecting between the products could affect the patient's treatment, and whether differences between the products have practical clinical significance. Here, in the

---

[43] *See* Jaydira Del Rivero et al., *Systemic Therapy for Tumor Control in Metastatic Well-Differentiated Gastroenteropancreatic Neuroendocrine Tumors: ASCO Guideline*, 41 J. Clinical Oncology 5049, 5049 (2023) (identifying "potential benefits and harms" as considerations in GEP-NETs treatment decisions); *see also Step 3: Clinical Research*, Food & Drug Admin., https://www.fda.gov/patients/drug-development-process/step-3-clinical-research (last visited Oct. 14, 2026) (explaining that Phase 3 studies assess whether a drug "offers a treatment benefit").

context of complex targeted therapies to treat patients suffering from serious cancers, false representations that data show BEXLUTRY has the "same clinical benefits" are material to prescribing decisions and could have a serious impact on patient care.

**PLAINTIFFS HAVE BEEN AND CONTINUE TO BE HARMED BY CURIUM'S FALSE AND MISLEADING ADVERTISING**

85. Plaintiffs and Curium are direct competitors in the market for lutetium-based radioligand therapies indicated for the treatment of GEP-NETs. They compete for the same patients, prescriptions, HCPs, treatment centers, suppliers, and market share in a two-player market. Accordingly, Curium's false and misleading advertising necessarily has a direct and substantial impact on Plaintiffs' business.

86. Until just last month, LUTATHERA® was the only FDA-approved lutetium-based radioligand NETs therapy on the market. Curium's Lu-177 dotatate, BEXLUTRY, was approved on September 14, 2026, and Lantheus's generic Lu-177 dotatate, BRAVNETSA, was approved on September 21, 2026. On information and belief, Lantheus has yet to set a launch date for BRAVNETSA, and BRAVNETSA is not currently available.[44] Until BRAVNETSA launches, the lutetium-based radioligand NETs therapy market is a two-player market, and every patient, prescription, and dollar of market share diverted by Curium's false and misleading messaging necessarily comes at Plaintiffs' expense.

87. Curium's claims with respect to equivalence and FDA-approved equivalence are comparative claims targeted directly at LUTATHERA® and Plaintiffs. On information and belief, Curium's false and misleading advertising diverts patient referrals, prescriptions, and treatment-

---

[44] Adrian Kessler, *Lantheus Holdings Wins FDA Approval for Bravnetsa Before Curium Vote*, Mugglehead (Sept. 23, 2026), https://mugglehead.com/lantheus-bravnetsa-fda-approval-curium-vote/ ("Lantheus has not announced [BRAVNETSA's] launch date or price.").

center adoption from LUTATHERA® to BEXLUTRY. HCPs exposed to Curium's claims that BEXLUTRY is an FDA-approved "radioligand equivalent" offering "equivalent clinical benefits" to LUTATHERA® are likely to conclude, incorrectly, that the FDA has found the two products to be therapeutically or otherwise equivalent, and to prescribe BEXLUTRY in place of LUTATHERA® on that false premise.

88. The breadth of the harm to Plaintiffs is illustrated by Curium's success in seeding its false "radioligand equivalent" message beyond its own advertising and into the broader information ecosystem on which HCPs and patients increasingly rely. Curium distributed its September 14, 2026, press release containing the term "radioligand equivalent" (as well as other false claims alleged above) through GlobeNewswire.[45] Numerous pharmaceutical industry

[45] *See* Curium, *Curium Announces FDA Approval of BEXLUTRY Lutetium Lu 177 Dotatate Injection for Adults with SSTR-Positive GEP-NETs*, GlobeNewswire (Sept. 14, 2026), https://www.globenewswire.com/news-release/2026/09/14/3361587/0/en/curium-announces-fda-approval-of-bexlutry-lutetium-lu-177-dotatate-injection-for-adults-with-sstr-positive-gep-nets.html.

publications, including BioSpace,[46] Drugs.com,[47] Drug Store News,[48] NETRF,[49] AuntMinnie,[50] and Fierce Pharma, parroted Curium's false and misleading language, with Fierce Pharma going so far as to falsely describe BEXLUTRY as a "generic."[51] Most troublingly, Curium's invented term "radioligand equivalent" and the false message it necessarily implies have been picked up and are being reproduced by artificial intelligence: as shown on the following page, Google AI's response to the question "What is BEXLUTRY?" disseminates the false message that

---

46 *See* Curium, *Curium Announces FDA Approval of BEXLUTRY Lutetium Lu 177 Dotatate Injection for Adults with SSTR-Positive GEP-NETs*, BioSpace (Sept. 14, 2026), https://www.biospace.com/press-releases/curium-announces-fda-approval-of-bexlutry-lutetium-lu-177-dotatate-injection-for-adults-with-sstr-positive-gep-nets ("BEXLUTRY is the first radioligand equivalent for the treatment of GEP-NETs in adults and the first radioligand therapy from Curium™ approved by the FDA"; "BEXLUTRY is a radioligand equivalent approved through the FDA's 505(b)(2) pathway . . . .").

47 *See* Curium, *FDA Approves Bexlutry (Lutetium Lu 177 Dotatate) for the Treatment of Somatostatin Receptor-Positive Gastroenteropancreatic Neuroendocrine Tumors in Adults*, Drugs.com (Sept. 14, 2026), https://www.drugs.com/newdrugs/fda-approves-bexlutry-lutetium-lu-177-dotatate-somatostatin-receptor-positive-6886.html (same).

48 *See* Sandra Levy, *Curium Obtains FDA Nod for Generic Lutathera*, Drug Store News (Sept. 15, 2026), https://drugstorenews.com/curium-obtains-fda-nod-generic-lutathera (same).

49 *See FDA Approves New Radioligand Therapy for GEP-NETs*, Neuroendocrine Tumor Rsch. Found. (Sept. 21, 2026), https://netrf.org/2026/09/21/fda-approves-new-radioligand-therapy-for-gep-nets/ ("Bexlutry is a radioligand equivalent (RLE), a form of PRRT (peptide receptor radionuclide therapy) that shares the same active ingredient, dosing, administration, and expected efficacy and side effects as an already-approved lutetium radioligand therapy.").

50 *See* Staff Writers, *Curium Gets FDA Approval for Lu-177 Injection for GEP-NETs*, AuntMinnie.com (Sept. 15, 2026), https://cdn.auntminnie.com/clinical-news/molecular-imaging/nuclear-medicine/news/15834934/curium-gets-fda-approval-for-lu177-injection-for-gepnets (Bexlutry "was approved through the FDA's 505(b)(2) pathway as a radioligand equivalent to the Lutathera Lu-177 dotatate . . . .").

51 *See* Angus Liu, *FDA Approves First Radioligand Equivalent, Curium's Copycat of Novartis' Lutathera*, Fierce Pharma (Sept. 15, 2026), https://www.fiercepharma.com/pharma/fda-approves-first-radioligand-equivalent-curiums-copycat-novartis-lutathera ("The FDA has approved the industry's very first generic radioligand therapy, known as a radioligand equivalent.").

BEXLUTRY is a "radioligand equivalent" and incorrectly treats that term as interchangeable with "generic," necessarily implying that the FDA made a determination as to those statuses.

**What is Bexlutry?**

- It is a **radioligand therapy** (a type of targeted radioactive medicine).
- Developed by Curium, it acts as a generic or "radioligand equivalent" to **Lutathera**.
- It binds to somatostatin receptors on the surface of these cancer cells to deliver localized radiation directly to the tumor while limiting damage to healthy tissues. CheckRare +5

89. Once seeded into AI-generated responses that HCPs and patients increasingly consult when researching treatment options, Curium's false equivalency message is repeated and amplified at scale, well beyond the reach of Curium's own advertisements. On information and belief, other leading AI models including Grok, ChatGPT, and Claude generate comparable responses implying the FDA has determined that BEXLUTRY is a generic for or equivalent to LUTATHERA®. This misleading effect is largely immune to correction through the ordinary channels by which a single false advertisement might otherwise be identified and challenged. Each day that Curium's false claims remain embedded in AI-generated and third-party publications compounds the injury to Plaintiffs and makes the false message increasingly difficult to unwind.

90. Curium's advertising also causes reputational and goodwill harm to Plaintiffs that cannot be fully remedied through money damages. Together, Plaintiffs have invested years of research and tens of millions of dollars developing and marketing LUTATHERA®, a pioneering therapy that the National Cancer Institute's Endocrine Oncology Branch Chief called "a major advance" and that treating physicians have described as a "game changer" for a "huge, unmet need."[52] LUTATHERA®'s reputation depends in substantial part on HCPs' and patients'

52 *See* NCI Staff, *supra* note 10; *see also* Caruso, *supra* note 14.

confidence in its distinct, independently demonstrated clinical profile. Curium's false claims that BEXLUTRY is an FDA-recognized equivalent to LUTATHERA® improperly appropriate the hard-earned goodwill and credibility Plaintiffs have built in LUTATHERA®, while simultaneously implying that LUTATHERA® offers nothing distinctive that BEXLUTRY does not also offer. Once HCPs and patients absorb the false impression that the FDA has approved BEXLUTRY as an equivalent alternative to LUTATHERA®, that impression is difficult to reverse, even if Curium's advertising is later corrected or withdrawn. The outsized impact of Curium's advertising is aggravated by the fact that this is a two-player market and any prescriptions Curium unjustly obtained are necessarily lost sales for Plaintiffs.

91. The harm to Plaintiffs from all of Curium's false claims is particularly acute given the small and concentrated nature of the treating community for GEP-NETs. Unlike a mass-market pharmaceutical, radioligand therapies for GEP-NETs are prescribed and administered by a comparatively limited number of specialized treatment centers, oncologists, and nuclear medicine physicians who communicate with one another. These specialized practitioners rely on shared professional resources, including the third-party publications and AI tools into which Curium has seeded its false equivalency message. In a market with only two active participants, false statements that reach this concentrated audience spread quickly, are repeated frequently, and are corrected slowly. Curium's pending merger with Lantheus ensures that this will likely remain a two-player market for the time being and that Curium's anticompetitive behavior will continue to have an outsized impact. These dynamics amplify the competitive harm to Plaintiffs with each day that Curium's false and misleading claims continue to circulate.

92. On information and belief, Plaintiffs have suffered and will continue to suffer both quantifiable financial harm and irreparable harm as a result of Curium's conduct. On information

and belief, Plaintiffs have lost, and will continue to lose, prescriptions, treatment-center adoption, and market share for LUTATHERA® that they would otherwise retain absent Curium's false and misleading claims, in an amount to be determined at trial. In addition, Plaintiffs' loss of goodwill and reputational injury, the erosion of LUTATHERA®'s market position in a two-player market, and the entrenchment of Curium's false equivalency message in third-party publications and AI-generated content cannot be fully remedied through money damages alone. For these reasons, preliminary and permanent injunctive relief is necessary to prevent irreparable injury to Plaintiffs while this action is pending and thereafter.

## COUNT ONE

## FALSE ADVERTISING AND UNFAIR COMPETITION UNDER SECTION 43(a) OF THE LANHAM ACT, 15 U.S.C. § 1125(a)

93. Plaintiffs repeat and reallege each of the allegations in the foregoing paragraphs as if fully set forth herein.

94. Curium's comparative advertising conveying that BEXLUTRY and LUTATHERA® are "clinical equivalents," have "equivalent clinical benefits," or that BEXLUTRY is a "radioligand equivalent," read in context, constitutes false advertising and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). These advertising claims are literally false—expressly and/or by necessary implication—because they convey that the FDA made a determination of equivalence that the FDA did not make. At a minimum, these claims are misleading because they falsely imply that the FDA made a determination of equivalence that the FDA did not make.

95. The advertising claims referenced in Paragraph 94, which include the advertising claim that "BEXLUTRY is a radioligand equivalent approved through the FDA's 505(b)(2) pathway targeting LUTATHERA® (lutetium Lu 177 dotatate), supported by published evidence

and targeted bridging data that demonstrated a similar biological and chemical profile to a previously approved radiopharmaceutical therapy" also constitute false advertising and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), because the claims are false establishment claims. Curium's advertising conveys the false message that reliable, scientific evidence has established that BEXLUTRY and LUTATHERA® are clinically or therapeutically equivalent, when in reality that is not the case. At a minimum, these claims are misleading because they falsely imply that reliable, scientific evidence has established that BEXLUTRY and LUTATHERA® are clinically or therapeutically equivalent.

96. On information and belief, Curium's challenged advertising was willfully made with knowledge of its falsity and intent to deceive consumers.

97. Curium's challenged advertising has a tendency to deceive and mislead consumers into believing that the FDA or reliable scientific evidence has determined that BEXLUTRY has the same equivalency relationship to LUTATHERA® as a generic would.

98. Curium's false and misleading claims are material in that they are likely to influence patients' and HCPs' prescribing and treatment decisions with respect to GEP-NET therapies.

99. Curium has offered to sell, sold, and/or advertised BEXLUTRY in interstate commerce throughout the United States, including in the Commonwealth of Massachusetts.

100. As a result of Curium's actions, Plaintiffs have been and will continue to be harmed. Curium's false and misleading advertising campaign causes great and irreparable injury to Plaintiffs' business in the form of diverted sales and damaged reputation and goodwill, in an amount that cannot be presently ascertained.

101. By reason of the foregoing, Plaintiffs are entitled to preliminary and permanent injunctive relief against Curium, restraining Curium from further acts of false advertising and unfair competition, and to recover damages caused by reason of Curium's aforesaid acts in an amount to be determined at trial.

## COUNT TWO

### UNFAIR AND DECEPTIVE TRADE PRACTICES UNDER MASS. GEN. LAWS ANN. CH. 93A, §§ 2 AND 11

102. Plaintiffs repeat and reallege each of the allegations in the foregoing paragraphs as if fully set forth herein.

103. Curium's comparative advertising conveying that BEXLUTRY and LUTATHERA® are "clinical equivalents," have "equivalent clinical benefits," or that BEXLUTRY is a "radioligand equivalent," read in context, constitutes an unfair and deceptive trade practice under Mass. Gen. Laws Ann. ch. 93A, §§ 2 and 11. These advertising claims are literally false—expressly and/or by necessary implication—because they convey that the FDA made a determination of equivalence that the FDA did not make. At a minimum, these claims are misleading because they falsely imply that the FDA made a determination of equivalence that the FDA did not make.

104. The advertising claims referenced in Paragraph 103, which include the advertising claim that "BEXLUTRY is a radioligand equivalent approved through the FDA's 505(b)(2) pathway targeting LUTATHERA® (lutetium Lu 177 dotatate), supported by published evidence and targeted bridging data that demonstrated a similar biological and chemical profile to a previously approved radiopharmaceutical therapy" also constitute unfair and deceptive trade practice under Mass. Gen. Laws Ann. ch. 93A, §§ 2 and 11, because, on information and belief, the claims are false establishment claims. Curium's advertising conveys the false message that

reliable, scientific evidence has established that BEXLUTRY and LUTATHERA® are clinically or therapeutically equivalent, when in reality that is not the case. At a minimum, these claims are misleading because they falsely imply that reliable, scientific evidence has established that BEXLUTRY and LUTATHERA® are clinically or therapeutically equivalent.

105. On information and belief, Curium's challenged advertising was willfully made with knowledge of its falsity and intent to deceive consumers.

106. Curium's challenged advertising has a tendency to deceive and mislead consumers into believing that the FDA or reliable scientific evidence has determined that BEXLUTRY has the same equivalency relationship to LUTATHERA® as a generic would.

107. Curium's false and misleading claims are material in that they are likely to influence patients' and HCPs' prescribing and treatment decisions with respect to GEP-NET therapies.

108. Curium has offered to sell, sold, and/or advertised BEXLUTRY in interstate commerce throughout the United States, including in the Commonwealth of Massachusetts.

109. As a result of Curium's actions, Plaintiffs have been and will continue to be harmed. Curium's false and misleading advertising campaign causes great and irreparable injury to Plaintiffs' business in the form of diverted sales and damaged reputation and goodwill, in an amount that cannot be presently ascertained.

110. By reason of the foregoing, Plaintiffs are entitled to preliminary and permanent injunctive relief against Curium, restraining Curium from further acts of unfair and deceptive trade practices, and to recover damages caused by reason of Curium's aforesaid acts in an amount to be determined at trial.

## COUNT THREE

## COMMERCIAL DISPARAGEMENT UNDER MASSACHUSETTS COMMON LAW

111. Plaintiffs repeat and reallege each of the allegations in the foregoing paragraphs as if fully set forth herein.

112. Curium's comparative advertising conveying that BEXLUTRY and LUTATHERA® are "clinical equivalents," have "equivalent clinical benefits," or that BEXLUTRY is a "radioligand equivalent" constitutes commercial disparagement under Massachusetts common law. These advertising claims are literally false—expressly and/or by necessary implication—because they convey that the FDA made a determination of equivalence that the FDA did not make.

113. Curium's false and misleading statements targeting Plaintiffs' product LUTATHERA® have been published to consumers via Curium's HCP-facing website for BEXLUTRY and in its September 14, 2026, press release announcing the FDA approval of BEXLUTRY, published on Curium's website and through third-party websites, including GlobeNewswire.

114. Curium published its false statements with knowledge—or, at a minimum, reckless disregard—of their falsity. Curium knew that the FDA did not make any determination of equivalence between BEXLUTRY and LUTATHERA®. On information and belief, Curium intentionally selected advertising language to mimic FDA terminology regarding generics and therapeutic equivalence determinations to mislead consumers, including by coining the term "radioligand equivalent."

115. As a result of Curium's actions, Plaintiffs have been and will continue to be harmed. Curium's false and misleading comparative advertising campaign causes great and irreparable

injury to Plaintiffs' business in the form of diverted sales and damaged reputation and goodwill, in an amount that cannot be presently ascertained. As a direct competitor in a two-player market for FDA-approved radioligand therapies for GEP-NETs, Curium intended or was able to foresee this harm to Plaintiffs.

116. By reason of the foregoing, Plaintiffs are entitled to preliminary and permanent injunctive relief against Curium, restraining Curium from further acts of commercial disparagement, and to recover damages caused by reason of Curium's aforesaid acts in an amount to be determined at trial.

## PRAYER FOR RELIEF

Plaintiffs respectfully request that the Court:

A. Enter judgment that Defendants have engaged in false advertising and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

B. Enter judgment that Defendants have engaged in unfair and deceptive trade practices in violation of Mass. Gen. Laws Ann. ch. 93A, §§ 2 & 11.

C. Enter judgment that Defendants have engaged in commercial disparagement in violation of Massachusetts common law.

D. Order a preliminary and permanent injunction enjoining and restraining Defendants and all those acting in concert or participation with Defendants from disseminating, in any medium, any advertisement or promotional material that falsely communicates that (1) the FDA has determined BEXLUTRY to be "equivalent" to LUTATHERA®, including but not limited to any claims that BEXLUTRY is "the FDA-approved lutetium Lu 177 dotatate with equivalent clinical benefits," "is a radioligand equivalent," or "has established clinical equivalence"; and (2) evidence and data show that Curium's and Plaintiffs' drugs are equivalent..

E. Award all damages sustained by Plaintiffs as a result of Defendants' unlawful conduct, and multiple damages and attorneys' fees as authorized by 15 U.S.C. § 1117(a) and Mass. Gen. Laws Ann. ch. 93A, § 11.

F. Award any and all of Defendants' profits received by Defendants from sales made and revenues collected as a result of their unlawful acts, including enhanced amounts as authorized by 15 U.S.C. § 1117(a).

G. Award Plaintiffs the costs of litigation and attorneys' fees to the full extent provided for under the law.

H. Award Plaintiffs pre- and post-judgment interest.

I. Grant any other and further relief the Court deems just and proper.

Dated: November 5, 2026

By: /s/ *Melissa Nott Davis*
Melissa Nott Davis
(melissa.davis@nelsonmullins.com)
NELSON MULLINS RILEY &
SCARBOROUGH LLP
One Financial Center, Suite 3500
Boston, MA 02111
(617) 217-4608

Megan K. Bannigan* (mkbannigan@debevoise.com)
Kathryn C. Saba* (ksaba@debevoise.com)
Timothy Cuffman* (tcuffman@debevoise.com)
Jennifer Romero* (jromero@debevoise.com)
DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, New York 10001
(212) 909-6000

*Attorneys for Plaintiffs Advanced Accelerator Applications USA, Inc. and Novartis Pharmaceuticals Corporation*

**Pro hac vice* forthcoming